IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and ARTHUR H. BUNTE, JR., as Trustee, ) ) ) ) *Plaintiffs*, ) ) v. ) ) AMERICAN MATERIALS, LLC, ) a Wisconsin limited liability company, ) ) *Defendant*. ) | Case No. 16-cv-10660 Judge Magistrate Judge |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, Jr., one of the Pension Fund's trustees, allege as follows:

### JURISDICTION AND VENUE

1.     This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and is a suit to recover employer contributions owed to the Pension Fund by Defendant in accordance with applicable collective bargaining and trust fund agreements.

2.     This Court has jurisdiction over this action under section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3.     Venue lies in this Court under section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") is an "employee benefit plan" as that term is defined in ERISA and is administered at its principal place of business in Rosemont, Illinois. Venue is also proper in this Court pursuant to

the forum selection clause contained in the Pension Fund's Trust Agreement which designates this district as the appropriate forum for lawsuits to collect unpaid contributions.

## PARTIES

4. The Pension Fund is an employee benefit plan and trust, with its principal and exclusive office located at 9377 West Higgins Road in Rosemont, Illinois.

5. The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

6. Plaintiff Arthur H. Bunte, Jr. is a trustee and "fiduciary" of the Pension Fund as that term is defined in ERISA. Pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Arthur H. Bunte, Jr. is authorized to bring this action on behalf of the Pension Fund and its participants and beneficiaries in his capacity as a trustee and fiduciary.

7. Defendant American Materials LLC ("American Materials") is a limited liability company organized under the laws of the State of Wisconsin. American Materials is an "employer" and a "party-in-interest" as those terms are defined by sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

## BACKGROUND INFORMATION

8. Local Union No. 662 ("Local 662") of the IBT is a labor organization which represents, for the purpose of collective bargaining, certain employees of American Materials and employees of other employers in industries affecting interstate commerce.

9. On or about January 14, 2014, American Materials and Local 662 entered into a collective bargaining agreement ("CBA") pursuant to which American Materials agreed to contribute to the Pension Fund "for each week in which an employee covered by this Agreement works, providing the employee has been on the payroll thirty (30) days or more." A true and accurate copy of the CBA between American Materials and Local 662 is attached hereto as Exhibit A.

10. Article 37 of the CBA states that "THIS AGREEMENT shall remain in full force and effect from March 31, 2013, TO AND INCLUDING April 2, 2016, and shall continue from year to year thereafter unless written notice of desire to terminate the Agreement is served by either party on the other at least **ninety (90)** days prior to date of expiration." (emphasis in original).

11. In a letter dated December 1, 2015, addressed to Ronald J. Brown, Vice-President of American Materials, Local 662 provided "notice of its desire to continue our Agreement, but also to open our Agreement for the purpose of negotiating changes or revisions in wages, hours, and working conditions." A true and accurate copy of the December 1, 2015 letter from Local 662 to Ronald J. Brown, Vice-President of American Materials LLC is attached hereto as Exhibit B.

12. Local 662 did not send any written notice to American Materials at least 90 days prior to April 2, 2016 indicating a desire either to negotiate changes to the CBA or to terminate the CBA other than the December 1, 2015 letter.

13. American Materials did not send Local 662 any written notice indicating a desire to terminate the CBA at least ninety days prior to April 2, 2016.

14. Article 22 of the CBA provides in part as follows:

> By the execution of this Agreement, the Employer recognizes the Employer's Association, which are parties hereto, to enter into appropriate Trust Agreements necessary for the administration of such [Central States, Southeast and Southwest Areas Pension] Fund, and to designate the Employer Trustees under such Agreement, hereby waiving all notice thereof and ratifying all actions taken or to be taken by such Trustees within the scope of their authority.

15. In a June 9, 2016 e-mail to a Pension Fund employee, an attorney representing American Materials indicated that a contract proposal "doing away with the Central States obligation, was ratified on May 26, 2016."

16. On August 31, 2016, the Pension Fund received a copy of a new CBA that American Materials contends terminated its obligation to contribute to the Pension Fund effective April 3, 2016.

17. American Materials is also a party to a Participation Agreement. A true copy of the Participation Agreement is attached as Exhibit C.

18. Pursuant to the Participation Agreement, American Materials also agreed to be bound by the Pension Fund Trust Agreement and "all rules and regulations presently in effect or subsequently adopted by the Trustees of the Fund(s) . . . .

19. Article III, Section 1 of the Pension Fund Trust Agreement provides in part that:

> [T]he obligation to make such Employer Contributions shall continue (and cannot be retroactively reduced or eliminated) after termination of the collective bargaining agreement until the date the Fund receives from the Employer (at the address specified above sent by certified mail with return receipt requested: a) a collective bargaining agreement signed by both the Employer and the Union that eliminates the duty to contribute to the Fund or b) written notification that accurately indicates that negotiations with the Union have reached impasse after collective bargaining agreement termination and the Employer has lawfully implemented a proposal to withdraw from the Fund.

20. Article III, Section 7 of the Pension Fund Trust Agreement provides that:

> An Employer is obliged to contribute to the Fund for the entire term of any collective bargaining agreement or participation agreement or any other written agreement accepted by the Fund (including any extension of a collective bargaining agreement through an evergreen clause or through an extension agreement of eighteen months or less) on the terms stated in that collective bargaining agreement, except as provided in subpart (b) of this Section 7 and Section 20 of Article IV of this Agreement.

21. Article III, Section 1 of the Trust Agreement, provides in part: "Each Employer shall remit continuing and prompt Employer Contributions to the Trust Fund as required by the applicable collective bargaining agreement, participation agreement, this [Trust] Agreement and/or other written agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority."

22. Article XIV, Section 4 of the Pension Fund's Trust Agreement provides that:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any contributions, withdrawal liability and/or other moneys due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and

as permitted by law. The interest payable by an Employer with respect to past due contributions and/or other money (other than withdrawal liability) prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) at an annualized interest rate of 7.5% (whichever is greater). ... Any judgment against an Employer for contributions and/or withdrawal liability owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid contributions and/or withdrawal liability. The interest rate after entry of a judgment against an Employer for contributions and/or other amounts due (other than withdrawal liability) shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

23. Article XIV, Section 12 of the Pension Fund Trust Agreement provides in part:

"An Employer shall be required to pay audit fees and audit costs if litigation is required to obtain access to any records that are requested in connection with an audit and/or if litigation is required to collect additional billings that result from the Audit…"

24. Section 3.01 of the Pension Fund's Plan provides in part that:

(a) A Collective Bargaining Agreement shall be acceptable only if such agreement requires a Contributing Employer to make Employer Contributions: . . . (6) for the entire term of such Collective Bargaining Agreement.

## STATUTORY AUTHORITY

25. Section 515 of ERISA , 29 U.S.C. § 1145, provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms

of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

26. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of--

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

## STATUTORY AND CONTRACTUAL VIOLATIONS

27. Because no "written notice indicating a desire to terminate" the CBA was sent "at least ninety (90) days prior to [the April 2, 2016] date of expiration," the CBA remained in effect through April 2, 2017.

28. American Materials agreed to be bound by the Pension Fund Trust Agreement and the rules of the Pension Fund as well as the Pension Fund's Plan.

29. Under the Pension Fund Trust Agreement and the Pension Fund's Plan, American Materials' obligation to contribute to the Pension Fund in accordance with the CBA cannot be terminated before April 2, 2017.

30. American Materials contends that its duty to contribute to the Pension Fund terminated effective April 3, 2016 and American Materials has not paid any contributions to the Pension Fund for the period subsequent to April 2, 2016.

31. American Materials has therefore breached the provisions of ERISA, the CBA, the Participation Agreement, the Pension Fund Trust Agreement and the Pension Plan by failing to pay any of the contributions (and interest due thereon) owed to the Pension Fund for the period subsequent to April 2, 2016.

32. American Materials owes the Pension Fund past due contributions for the period of April 3 through October 29, 2016 that are now past due as a result of the conduct set forth in paragraph 31 in an amount that is not known with specificity by the Pension Fund but based upon the contributions paid by American Materials prior to April 3, 2016 is estimated to be approximately $50,000, not including interest. In addition, American Materials will owe additional contributions to the Pension Fund for the period of October 30, 2016 through April 2, 2017.

33. Alternatively, if it is determined that the CBA was terminated on April 2, 2016 and the new CBA eliminated the duty to contribute to the Fund, American Materials owes contributions to the Pension Fund for the period from April 3, 2016 through the date American

Materials provided the required notice of the termination of its duty to contribute to the Pension Fund.

34. Despite demands that American Materials perform its statutory and contractual obligations with respect to making contributions to the Pension Fund, American Materials has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth herein.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendant in favor of the Pension Fund, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for:

  (i) the unpaid contributions owed to the Pension Fund for the period of April 3, 2016 through April 2, 2017;

  (ii) interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%;

  (iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

  (iv) any audit fees and costs incurred by the Pension Fund to calculate the amount owed by Defendant and

  (iv) attorneys' fees and costs.

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime

interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

    (c)    For such further or different relief as this Court may deem proper and just.

Respectfully submitted,

November 16, 2016

*/s/ Emily I. Falkof*
Emily I. Falkof (ARDC #6315437)
Attorney for Plaintiffs
CENTRAL STATES FUNDS
Law Department
9377 W. Higgins Road, 10th Floor
Rosemont, Illinois 60018-4938
(847) 939-2489
efalkof@centralstatesfunds.org